**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ELOY VELASCO BRISENO, and )
JANA HARRIS VELASCO, )
)
        Plaintiffs, )
)
v. )
) Case No. 18-02482-CM-JPO
MARKETING AND MANAGEMENT )
SOLUTIONS, LLC, et al., )
)
        Defendants. )
)

**MEMORANDUM AND ORDER**

Defendant Banamex, S.A. moves to dismiss Counts II, IV, V, VI, VII, and VIII of the complaint by plaintiffs Eloy Velasco Briseno and Jana Harris Velasco, solely with respect to defendant, for three reasons: lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), insufficient process under Rule 12(b)(4), and insufficient service of process under Rule 12(b)(5). (Doc. 12.)

**I.    Factual Background**

Plaintiffs are United States citizens residing in Johnson County, Kansas. Defendant Banamex, S.A.[1] is referenced in paragraph 17 of the complaint as "a Mexican company that can be found at 2029 Century Park E #42, Los Angeles, California 90067." (Doc. 1, at 6.) Defendant Banamex, S.A. is named as one of sixteen defendants to the above-captioned case.

This is a case about a timeshare scam involving multiple persons and business entities in Mexico and the United States, multiple wire transfers by plaintiffs, and plaintiffs' efforts to recover

---

[1] Multiple defendants and non-party entities referenced in filings for this motion are named or otherwise known as some variation of "Banamex." Plaintiffs appear to use "Banamex" to refer to both defendant Banamex, S.A. and non-party entities. To clearly distinguish between plaintiffs' allegations and specific defendants and non-party entities, all references to defendant Banamex, S.A. other than those quoted from plaintiffs' filings are not shortened to "Banamex."

their money. Nine other named defendants are relevant to identify and distinguish each of the wire transfers in this case from the facts involving defendant Banamex, S.A. and the alleged conspiracy. These nine defendants, as named in the complaint and later referenced by plaintiffs, are: Mario Morales Ortiz Pena ("Mario"), Banco Mercantil del Norte, S.A. ("Banco Norte"), Banorte USA Corporation ("Banorte USA"), Banorte, Prhometeus Consulting Group ("PRHometeus"), VHM and Company ("VHM"), Gaberi Consultores SC ("Gaberi"), BBVA Bancomer, S.A. ("BBVA"), and El Banco Nacional de Mexico ("Banco Nacional").

On or about June 2018, persons purporting to act for Marketing and Management Solutions, LLC ("M&M") contacted plaintiffs about potential sale of their timeshare in Mexico. This party represented to plaintiffs that the buyer was defendant Mario. Plaintiffs entered into an agreement (the "Agreement") allegedly with M&M and defendant Mario for the sale of their timeshare for $230,250.00. Between June and August 2018, persons claiming to be M&M and other entities requested plaintiffs pay various fees, taxes, insurance, costs, and miscellaneous charges to complete the sale of plaintiffs' timeshare. Plaintiffs paid these purported expenses across five different wire transfers totaling $101,547.00:

1. On June 15, 2018, $5,325.00 to Banco Norte and/or Banorte USA and/or Banorte with beneficiary defendant PRHometeus.

2. On June 22, 2018, $29,932.50 to Banco Norte and/or Banorte USA and/or Banorte with beneficiary defendant PRHometeus.

3. On July 2, 2018, $4,325.00 to defendant Banco Nacional and/or defendant Banamex, S.A. with beneficiary defendant VHM.

4. On July 19, 2018, $53,966.50 to defendant BBVA, with beneficiary defendant Gaberi.

5. On July 23, 2018, $7,998.00; to defendant BBVA, with beneficiary defendant Gaberi.

To date, no defendant has purchased plaintiffs' timeshare, and no defendant has returned plaintiffs' money. Only the third wire transfer involves defendant Banamex, S.A. All other involvement by defendant is found in plaintiffs' conspiracy allegations and recitation of other Counts.

**II.     Legal Standards**

In evaluating challenges to personal jurisdiction, the court assumes true all well-pleaded (plausible, non-conclusory, and non-speculative) facts alleged in plaintiff's complaint. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). Factual disputes in parties' affidavits are resolved in plaintiffs' favor. *Id.* (citing *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)). When personal jurisdiction is based on a conspiracy theory, "the plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007); *see Stoldt v. City of Toronto*, 678 P.2d 153, 156 (Kan. 1984) (listing the elements of civil conspiracy in Kansas).

To the extent that the court considers any exhibits or other records outside the pleadings, Federal Rule of Civil Procedure 12(d) only converts to summary judgment those motions made pursuant to Rule 12(b)(6). The Tenth Circuit has applied Rule 12(d) in limited circumstances to motions under Rule 12(b)(1) when the jurisdictional question is intertwined with the merits of the case. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). The defenses of Rule 12(b)(2), 12(b)(4), and 12(b)(5) are generally not proper grounds for summary judgment. 5C Charles Alan Wright et al., Fed. Prac & Proc. Civ. § 1366 (3d ed., Apr. 2019 update); *see also Nichols v. United States* 796 F.2d 361, 366 (10th Cir. 1986) (stating in the 12(b)(1) context that "Rule 12(b) does not authorize conversion whenever matters outside the pleadings are accepted by the court.").

### A. 12(b)(4) and 12(b)(5)

A Rule 12(b)(4) motion constitutes "an objection to the form of process or the content of the summons," while a motion made under Rule 12(b)(5) "challenges the mode or lack of delivery of a summons and complaint." *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994) (citations omitted). When the defendant is allegedly misnamed in the summons or does not exist, a motion to dismiss may be properly made under either Rule 12(b)(4) or Rule 12(b)(5).[2]

A plaintiff must validly serve the defendant with process before the court can exercise personal jurisdiction over that defendant. *See Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit . . . ."). When a defendant challenges service of process, the plaintiff has the burden of proving the sufficiency of service. *Ammon v. Kaplow*, 468 F. Supp. 1304, 1309 (D. Kan. 1979). A signed return of service is prima facie evidence of valid service, but can be overcome by strong and convincing evidence that the service or return was inaccurate. *Oltremari*, 871 F. Supp. at 1349 (adopting Report and Recommendation of Rushfelt, Mag. J.). The court may consider documentary evidence and weigh affidavits when evaluating the sufficiency of the plaintiff's service on the defendant. *Ammon*, 468 F. Supp. at 1309.

Under Federal Rule of Civil Procedure 4(h)(1), a domestic or foreign corporation must be served "in a judicial district of the United States" either (1) pursuant to state law in the jurisdiction where the action is brought or service is made; or (2) by delivering a copy of the summons and complaint to an agent authorized to accept service of process. Kansas allows service by return receipt

---

[2] As explained by Professors Wright and Miller:
> Although the distinction between the Rule 12(b)(4) and 12(b)(5) motions is easy to state, the line between them becomes blurred when the alleged defect is that the defendant either is misnamed in the summons or has ceased to exist. In these cases, the form of process could be challenged under Rule 12(b)(4) on the theory that the summons does not properly contain the names of the parties, or . . . [under 12(b)(5)] on the ground that the wrong party . . . has been served.

5B CHARLES ALAN WRIGHT ET. AL., FEDERAL PRACTICE & PROCEDURE § 1353 (3d ed., Apr. 2019 update).

delivery through certified mail. Kan. Stat. Ann. § 60-303 (2010). "Generally, when the Court finds that service is insufficient but curable, it should quash service and give plaintiff an opportunity to re-serve defendant." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 (D. Kan. 2008). However, where it appears unlikely that service can be cured, the court has broad discretion to dismiss the action. *See Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983).

### B. 12(b)(2)

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (internal quotation marks omitted). Kansas's long arm statute is construed to assert personal jurisdiction over a nonresident defendant to the full extent permitted by the due process clause, so if jurisdiction is consistent with the due process clause, then the Kansas long arm statute also authorizes jurisdiction. *See Blue Beacon Intern., Inc. v. Am. Truck Washes, Inc.*, 886 F. Supp. 485, 488 (D. Kan. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

The due process clause is satisfied "so long as there exist 'minimum contacts' between the defendant and the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Due process may be satisfied by showing through either general (all-purpose) or specific (conduct-linked) personal jurisdiction. *Benton*, 375 F.3d at 1075; *see Daimler AG v. Bauman*, 571 U.S. 117, 131 (2014).

### 1. General Jurisdiction

General jurisdiction is appropriate where a corporation's affiliations with the State are "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Absent exceptional circumstances, a corporation is "essentially at home" at its place of incorporation and principal place of business. *Id.* at 924; *see Daimler*, 571 U.S. at 139 & n.19 (discussing sufficient "exceptional circumstances").

The Tenth Circuit has established four factors for deciding whether a foreign corporation is "essentially at home" in the forum state:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996). When general jurisdiction is based on Internet activity, the Tenth Circuit has favored a requirement that "the defendant [must have] actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum." *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (emphasis original) (quoting *Smith v. Basin Park Hotel, Inc.*, 178 F. Supp. 2d 1225, 1235 (N.D. Okla. 2001)).

### 2. Specific Jurisdiction

Specific jurisdiction looks to "the relationship among the defendant, the forum, and the litigation." *Daimler*, 571 U.S. at 133 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). This is a two-step process. First, the court asks whether "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Benton*, 375 F.3d at

1075 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Second, if the defendant's actions support minimum contacts to exert personal jurisdiction, the court must ask whether that exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

This first "minimum contacts" step in specific jurisdiction has two requirements: first, the nonresident defendant must have "purposefully directed" its activities at the forum State resident; and second, the plaintiff's injuries must "arise out of" defendant's forum-related activity. *Shrader*, 633 F.3d at 1239 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Tenth Circuit has added that when a defendant's alleged contacts with the forum arise from Internet-based conduct, "it is necessary to adapt the analysis of personal jurisdiction . . . by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Id.* at 1240 (emphasis original).[3]

### III. Discussion

The court will briefly address the allegations, factual contentions, and supporting documents submitted by plaintiffs and defendant Banamex, S.A. The court will then resolve parties' 12(b)(4) and 12(b)(5) arguments before turning to 12(b)(2).

#### A. Allegations and Support

Paragraph 42 of the complaint describes both the relevant wire transfer to this motion and contains all of plaintiffs' specific factual allegations against defendant Banamex, S.A.

> On July 2, 2018, pursuant to the Agreement and requests made by Defendant M&M and Defendant Mario, Plaintiffs wired four thousand three hundred twenty-five United States dollars ($4,325.00) from their Community America bank account to Defendant

---

[3] While plaintiffs have suggested that the *Zippo* "sliding scale" analysis could be appropriate for personal jurisdiction in the Internet context, the Tenth Circuit has declined to take a position on the *Zippo* test. *See Shrader*, 633 F.3d at 1242 n.5 (explaining *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)); *see also Inspired by Design LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1202–05 (D. Kan. 2016) (analyzing the *Shrader* standard and "high bar" for general or specific jurisdiction based on non-targeted Internet presence).

> Banco Nacional and/or Defendant Banamex with the beneficiary Defendant VHM to pay for the initial, additional costs and other expenses for the purchase of Plaintiffs' timeshare.

(Doc. 1, at 10.)

Paragraph 42 then cites to plaintiffs' Exhibit E. Exhibit E appears to be the Foreign Exchange Wire Receipt for the transaction, issued by Community America Credit Union. (Ex. E.) The receipt lists "Banco Nacional de Mexico" as "Beneficiary FI" and also lists "VHM and CO S DE RL DE CV" as "Beneficiary." (*Id.*) As alleged in Paragraph 42, the court can determine that "Banco Nacional" and "VHM" in Paragraph 42 correspond to "Banco Nacional de Mexico" and "VHM and CO S DE RL DE CV" on the receipt. However, the receipt makes no mention of any entity by the name of "Banamex, S.A."[4] Plaintiffs have attempted service on Banamex, S.A. by certified mail to "Banamex, S.A." at 2029 Century Park E #42, Los Angeles, California 90067. The docket shows that service was delivered to and signed for by someone at the Century Park address on September 21, 2018. (Doc. 6.)

Plaintiffs further allege that defendant Banamex, S.A. conspired with the other defendants in this case as part of the scam. The conspiracy allegation relevant to Banamex, S.A, is found in Paragraph 108 of the complaint: "Defendants conspired and agreed among themselves to participate in conduct to steal and misappropriate Plaintiffs' funds through a scheme to deceive Plaintiff[s] into believing that Plaintiff[s] were actively working towards the sale of their timeshare." (Doc. 1, at 19.)

Defendant Banamex, S.A. responds that "Banamex, S.A." does not exist, the proper defendant for plaintiffs' claims against Banamex, S.A. is Banco Nacional de Mexico (commercially, "Citibanamex"), that Banamex, S.A. (as a non-existent entity) does not have an agent for service of process at the address served by plaintiffs, and that the address served by plaintiffs used to be that of Banamex USA. Defendant supports these contentions through the Declaration of Jose Alejandro De

---

[4] The receipt's nearest reference to "Banamex" is the SWIFT code for Banco Nacional de Mexico, "BNMXMXMM", located below the bank name. (Ex. E.) Both plaintiffs and defendant Banamex, S.A. acknowledge that Banco Nacional de Mexico is known commercially as "Citibanamex."

-8-

Iturbide Gutierrez, "a General Counsel/Managing Director for Banco Nacional de Mexico, S.A. . . . known commercially as Citibanamex." (Gutierrez Decl.) The declaration states that Banamex, S.A., does not exist, Banamex USA used to be located at the Century Park address, and Banamex USA is not a subsidiary of Citibanamex. (*Id.*) The declaration does not state that Banco Nacional de Mexico is the proper defendant.

Plaintiffs respond by submitting a notice from the website of Banamex USA (banamexusa.com), which states that as of July 1, 2017, Banamex USA will be operating as BUSA Servicing, Inc., and that users are asked to address correspondence to "BUSA Servicing, Inc. 2029 Century Park East Suite 4100 Los Angeles, CA 90067."[5] (Doc. 17, Ex. O.) Plaintiffs also submit a Bloomberg.com snapshot of BUSA Servicing Inc., which states that the company "was formerly known as Banamex USA and changed its name to BUSA Servicing, Inc. in December, 2009." (Doc. 17, Ex. P.) Plaintiffs further allege that "Banamex's website provides a link to a credit card agreement" and that "Banamex's website's credit card agreement suggests that Banamex voluntarily enters into contracts with U.S. citizens over the internet." Plaintiffs attach in support a document labeled "CREDIT CARD AGREEMENT" which identifies itself as "[a] contract with BUSA Servicing Inc." that "governs the use of [the prospective customer's] card and account."[6] (Doc. 17, Ex. Q.) The card agreement includes a choice of law provision stating that its terms and enforcement "shall be governed by U.S. federal law and the law of California, where we are located." (Ex. Q, at 16.) Plaintiffs argue that these submissions support that Banamex, S.A. maintains a physical location in Los Angeles, California and that Banamex, S.A. has purposefully availed itself of the laws and protection

---

[5] The Tenth Circuit has recognized that courts may take judicial notice of factual information provided by parties on the Internet, and has held it an abuse of discretion for courts to not take judicial notice in such a case. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).

[6] Although banamexusa.com appears to no longer link to the card agreement submitted by plaintiffs, defendant has not contested the existence of the agreement. The court located past versions of the website and card agreement through the Internet Archive Wayback Machine (https://web.archive.org/web/2018*/banamexusa.com), and these versions appear identical to plaintiffs' exhibits.

of California and the United States. Plaintiffs further argue that any jurisdictional deficiencies with respect to Kansas are cured by the allegation of a conspiracy between Banamex, S.A. and other defendants who directly solicited plaintiffs in Kansas.

Defendant responds with records from the California Secretary of State, available online, showing the history of name changes for the entity currently known as "BUSA Servicing, Inc." Defendant's records show that an entity was named "California Commerce Bank" in May 1989, renamed to "Citibank (Banamex USA)" in October 2005, renamed to "Banamex USA" in November 2009, that the address of "Banamex USA" in March 2017 was "2029 Century Park East 42nd Floor, Los Angeles, CA 90067," and that the entity was finally renamed to "BUSA Servicing, Inc." in May 2017. (Ex. 1.) Newer filings have not changed the name of the corporation, and defendant's records show that as of August 2017, the business address of BUSA Servicing, Inc. was "2029 Century Park East, 42nd Floor." (*Id.*) The records contain no mention of Banamex, S.A. as a current or prior name of BUSA Servicing, Inc.

### B. 12(b)(4) and 12(b)(5)

The court first addresses defendant's challenges to service. While service on defendant Banamex, S.A. was returned, defendant's declaration from Mr. Gutierrez suggests defendant does not exist and has no agent at the address served by plaintiffs. Plaintiffs recognize defendant's position "that Banamex is a non-existent entity and does not have an agent to accept service [at the address served]," but argue that Banamex, S.A. is an entity "also known as and doing business as BUSA Servicing, Inc." in California. (Doc. 17, at 4.) This appears to be a case of mistaken identity resulting from the use of "Banamex" to refer to each of Banamex, S.A, Banamex USA, and BUSA Servicing, Inc.

Defendant has provided business records for BUSA Servicing, Inc., the entity plaintiffs allege to be Banamex, S.A., showing that while BUSA Servicing, Inc. was once called Banamex USA, it has never been defendant Banamex, S.A. Accordingly, while the notice and card agreement provided by plaintiffs suggest that Banamex USA (now BUSA Servicing, Inc.) exists and may have some presence in the United States, these documents are not related to defendant Banamex, S.A., and do not show the existence or presence of defendant, or an agent of defendant, at the address served. While service was returned, all other documents before the court strongly support that there is no Banamex, S.A. at the address served, and that Banamex, S.A. does not exist.

Pursuant to Federal Rule of Civil Procedure 12(b)(4), because whomever plaintiffs served at the Century Park address was not defendant Banamex, S.A., the person or entity served was not properly named, and process was insufficient. Pursuant to Federal Rule of Civil Procedure 12(b)(5), because whomever was served at the Century Park address was not defendant Banamex, S.A., service of process on defendant was insufficient. Without sufficient process or service of process on defendant, the court cannot exert personal jurisdiction.

### C. 12(b)(2)

Even assuming defendant Banamex, S.A. was properly served, the court lacks personal jurisdiction.

#### 1. General Jurisdiction

Briefly examining general jurisdiction, plaintiffs have asserted that Banamex, S.A. is a Mexican company, that it was known as Banamex USA, and that it is currently known as BUSA Servicing, Inc. and operating in California. Plaintiffs have further provided a credit card agreement that was available to prospective customers of BUSA Servicing, Inc., containing a choice of law provision selecting California and U.S. federal law. Turning to the guidance of the Tenth Circuit, there

is no suggestion that defendant solicits business in Kansas through a local office or agents, or that defendant sends agents into the state on a regular basis to solicit business, or that defendant holds itself out as doing business in Kansas, or that defendant does any significant volume of business in Kansas. *See Kuenzle*, 102 F.3d at 457. The website of Banamex USA/BUSA Servicing, Inc. and its notice and card agreement were generally available to anyone, and do not show that defendant Banamex, S.A. conducted commercial business over the Internet on a sustained basis with a substantial number of residents in Kansas. *See Shrader*, 633 F.3d at 1243. These allegations and submissions do not meet the burden necessary to show that defendant Banamex, S.A. is "essentially at home" in Kansas.

### 2. Specific Jurisdiction

The court turns now to the first prong of specific jurisdiction: minimum contacts. Here, plaintiffs must show that defendant purposefully directed its activities at plaintiffs, and that plaintiffs' injuries arise from defendant's Kansas-related activity. *See id.* at 1239. Contacts based on Internet activity must be shown to be intentionally directed at Kansas, not merely accessible there. *See id.* at 1240.

Plaintiffs have two grounds relevant to specific jurisdiction: the third wire transfer, and the allegation of conspiracy. While plaintiffs have incorporated their other factual assertions into their conspiracy allegation, the only non-conclusory assertion applicable to Banamex, S.A. is the third wire transfer, a standalone receipt of funds in Mexico.[7] The conspiracy allegation regarding defendant Banamex, S.A., reproduced above, takes the general form that "Defendants conspired . . . to steal and misappropriate Plaintiffs' funds . . . ." (Doc. 1, at 19.) This sort of bare allegation, without additional facts regarding defendant's involvement, is conclusory as to defendant Banamex, S.A. and does not meet the showing required in Kansas, which requires "(1) two or more persons; (2) an object to be

---

[7] Plaintiffs' allegations against Banamex, S.A. in Counts II (fraud), IV (breach of fiduciary duty), V (fraudulent misrepresentation), VI (negligent misrepresentation), and VII (conversion) outside the wire transfers and conspiracy claim are similarly conclusory as to the court's personal jurisdiction over defendant.

-12-

accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *See Melea*, 511 F.3d at 1069 (requiring prima facie showing); *Stoldt*, 678 P.2d at 156 (listing elements). Only the wire transfer remains.

The Kansas plaintiffs allege that they wired $4,325.00 from their bank account "to Defendant Banco Nacional *and/or* Defendant Banamex with beneficiary Defendant VHM" in Mexico. (Doc. 1, at 10 (emphasis added).) Plaintiffs' receipt then shows that the transfer was to defendant Banco Nacional with beneficiary defendant VHM. The alleged remaining ties of defendant Banamex, S.A., which must be to Kansas, are (1) an online notice by Banamex USA to direct correspondence to BUSA Servicing, Inc. in California; and (2) an online card agreement of BUSA Servicing, Inc. governed by California and U.S. federal law, with a contact address in California. Thus, the only tie of defendant Banamex, S.A. to Kansas is the alleged receipt of a wire transfer in Mexico. Even absent the contradiction by plaintiffs' documentation, the passive receipt of a single wire transfer in Mexico, without further involvement, is insufficient to show that defendant Banamex, S.A. either purposefully directed action at plaintiffs in Kansas, or has any Kansas-related action giving rise to plaintiffs' injuries. *See Shrader*, 633 F.3d at 1239 Similarly, even absent the contradiction by California records appearing to show that BUSA Servicing, Inc. is not Banamex, S.A, the availability of (1) the online notice, and (2) the card agreement does not show that defendant Banamex, S.A. has Internet activity directed at Kansas, rather than merely accessible there. *See id.* at 1240. Accordingly, defendant Banamex, S.A. does not have minimum contacts with Kansas.

Because plaintiffs have not shown that defendant Banamex, S.A. is "essentially at home" in Kansas, or that there are minimum contacts between defendant Banamex, S.A. and Kansas, the court cannot exert personal jurisdiction over defendant. Because the court concludes that it cannot exert personal jurisdiction over defendant, the court does not reach the question of whether it would be

overly burdensome to require defendant to be subject to personal jurisdiction in Kansas. Pursuant to Federal Rule of Civil Procedure 12(b)(2), because the court lacks personal jurisdiction over defendant, defendant's motion to dismiss must be granted.

The court understands the difficulty of pursuing as many different parties and entities as may be involved in this type of case, but cannot exert personal jurisdiction beyond its constitutional boundaries.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction (Doc. 12) is granted. Counts II, IV, V, VI, VII, and VIII are dismissed against defendant Banamex, S.A. only.

Dated this 26th day of June, 2019, at Kansas City, Kansas.

                                           **s/ Carlos Murguia**
                                           **CARLOS MURGUIA**
                                           **United States District Judge**