**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ELOY VELASCO BRISENO, and      )
JANA HARRIS VELASCO,           )
                                     )
        **Plaintiffs,**        )
                                     )
v.                                  )
                                   )     **Case No. 18-02482-CM-JPO**
MARKETING AND MANAGEMENT   )
SOLUTIONS, LLC, et al.,            )
                                   )
        **Defendants.**      )

## MEMORANDUM & ORDER

On September 7, 2018, plaintiffs sued 16 defendants allegedly involved in a fraudulent offer to purchase plaintiffs' Mexican timeshare property. Plaintiffs also moved that the court freeze any of plaintiffs' funds held by defendants (Doc. 3). Thirteen defendants now remain in this suit, with a July 1, 2019 Order to Show Cause recommending that more be dismissed absent plaintiffs showing the court good cause for failure to timely serve process (Doc. 22). To date, not for lack of effort, plaintiffs have served only 3 of those 13 defendants. El Banco Nacional de Mexico[1], one of those served defendants, now moves for dismissal (Doc. 36). Plaintiffs counter with a motion to amend their complaint (Doc. 47). For the reasons set out more fully below, the court orders as follows:

- Plaintiffs' Motion For Temporary Injunction (Doc. 3) is denied;

- Plaintiffs must show cause, on or before March 11, 2020, why this court should not adopt Judge O'Hara's recommendation that this case's unserved defendants be dismissed without prejudice for lack of timely service of process (Doc. 22);

- Plaintiffs' Motion to Amend Pleadings (Doc. 47) is denied; and

- El Banco Nacional de Mexico's Motion to Dismiss (Doc. 36) is granted.

---

[1] Defendant El Banco Nacional De Mexico's filings identify itself as "Citibanamex." "Citibanamex formerly operated under the commercial name 'Banamex'"—an entity "Citibanamex" alleges is distinct from defendant Banamex, S.A.—until it was rebranded October 2016. (Doc. 37, at 2–3.) For the purposes of this and any future orders, the court identifies "Citibanamex" using plaintiff's chosen designation: defendant "Banco Nacional." (*See, e.g.*, Doc. 1, at 3 and ¶ 16.)

## I.    Background

Plaintiffs are United States citizens residing in Johnson County, Kansas, who own a timeshare property located in Puerto Vallarta, Mexico.  This case concerns an alleged scam to purchase plaintiffs' timeshare, which resulted in plaintiffs wiring funds they now seek to recover.  Plaintiffs originally alleged involvement in that scam from the following sixteen different persons and business entities:

| Originally Named Defendants | |
|---|---|
| **"U.S. defendants"** (United States Citizens) | 1.  Marketing & Management Solutions, LLC ("M&M") <br> 2.  Deborah S. Smith ("Smith") <br> 3.  James Allen Buckley ("Buckley") <br> 4.  Banorte USA Corporation ("Banorte USA") <br> 5.  Banorte ("Banorte") <br> 6.  BBVA Bancomer, S.A. ("BBVA") <br> 7.  Banamex, S.A. ("Banamex") |
| **"Foreign defendants"** (Mexican Citizens) | 8.  Mario Morales Ortiz Pena ("Mario") <br> 9.  Banco Mercantil del Norte, S.A. ("Banco Norte") <br> 10. Alejandro Garcia Reyes ("Reyes") <br> 11. Geraldo Reyes Corona ("Corona") <br> 12. PRHometeus Consulting Group ("PRHometeus") <br> 13. VHM and Company ("VHM") <br> 14. Gaberi Consultores, S.C. ("Gaberi") <br> 15. Titanium Inmobilarios Y Asociados, S.C. ("Titanium") <br> 16. El Banco Nacional de Mexico ("Banco Nacional") |

The court has since dismissed defendants M&M, Smith, and Banamex. (*See generally* Doc. 20 (granting plaintiffs' motion to dismiss M&M and Smith) and Doc. 21 (granting Banamex's motion to dismiss for lack of personal jurisdiction).)

According to plaintiffs, the scam went something like this.  Around June 2018, a purported M&M representative contacted plaintiffs about potentially selling their timeshare to an interested buyer, defendant Mario.  Plaintiffs entered into an agreement (the "Agreement") allegedly with M&M and defendant Mario, whereby plaintiffs agreed to sell their timeshare to defendant Mario for $230,250. Between June and August 2018, purported M&M representatives and defendant Mario requested that plaintiffs pay various fees, taxes, insurance, costs, and miscellaneous charges to complete the sale of

plaintiffs' timeshare. Plaintiffs paid these purported expenses across five different wire transfers totaling $101,547:

June 15, 2018:    Plaintiffs wired $5,325 to defendants Banco Norte, Banorte USA, and/or Banorte for defendant PRHometeus to pay purported sale expenses.

June 22, 2018:    Plaintiffs wired $29,932.50 to defendants Banco Norte, Banorte USA, and/or Banorte for defendant PRHometeus to pay purported sale expenses.

July 2, 2018:    Plaintiffs wired $4,325 to defendant Banco Nacional and/or defendant Banamex, S.A. for defendant VHM to pay purported sale expenses.

July 19, 2018:    Plaintiffs wired $53,966.50 to defendant BBVA for defendant Gaberi to pay purported sale expenses.

July 23, 2018:    Plaintiffs wired $7,998 to defendant BBVA for defendant Gaberi to pay purported sale expenses.

Plaintiffs believed that, under the Agreement, defendant Mario would reimburse them for these expenses at the sale's closing. To date, no defendant has purchased plaintiffs' timeshare, and no defendant has returned plaintiffs' money. Consequently, plaintiffs filed this suit. As against Defendant Banco Nacional, plaintiffs level claims for fraud, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy.

## II.    Plaintiffs' Motion for "Temporary Injunction"

The court begins with plaintiffs' motion to "freez[e] any and all" of plaintiffs' wired funds allegedly held by defendants Banco Norte, Banorte USA, Banorte, BBVA, Banco Nacional, and Banamex. (Doc. 3, at 3.) Ambiguously, plaintiffs' motion requests, under Rule 65 of the Federal Rules of Civil Procedure, a "temporary injunction." (Doc. 3, at 1.) Rule 65(a) contemplates issuing a "*preliminary* injunction." Rule 65(b) contemplates issuing a "temporary *restraining order*" ("TRO"). But no part of Rule 65 contemplates plaintiffs' request: a "temporary injunction."

However construed, plaintiffs' motion fails. Construed as a preliminary-injunction request, plaintiffs have failed to show defendants received the required notice. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). Indeed, as discussed below in Section III, plaintiffs have yet to accomplish service of this suit on 10 of the remaining 13

-3-

defendants, including defendants Banorte USA and BBVA. Alternatively construed as TRO request, nowhere in plaintiffs' motion does plaintiffs' attorney "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Because Rule 65's requirements "must be strictly complied with," plaintiffs' motion fails. *Commercial Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1356 (10th Cir. 1972).

Still, plaintiffs' motion fails for a more fundamental reason. To earn either a preliminary injunction or TRO, plaintiffs must show that nonaction risks irreparably harming them. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001) (noting four factors that a party seeking a preliminary injunction ordinarily must show, including "that it will suffer irreparable harm unless the preliminary injunction is issued"); Fed. R. Civ. P. 65(b)(1)(A) (conditioning a TRO on "clearly show[ing] that immediate and irreparable injury, loss, or damage . . . ."). Irreparable harm is "suffered when 'the injury can[not] be adequately atoned for in money.'" *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250 (quotation omitted). Here, however, plaintiffs allege only monetary loss; and nothing but plaintiffs' "wholly conclusory statements" shows that loss "cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages"); *Smart Comm'n Sys., LLC v. Region Constr., Inc.*, No. 17-2488-JAR-JPO, 2017 WL 3730492, *2 (D. Kan. Aug. 30, 2017) ("[W]holly conclusory statements alone will not constitute irreparable harm.").

Accordingly, the court denies plaintiffs' motion for temporary injunction.

### III. Show-cause Order Concerning Unaccomplished Service of Process

On July 1, 2019, Judge James P. O'Hara ordered plaintiffs to show cause why this action should not be dismissed for lack of timely service of process on this case's remaining 13 defendants. (Doc. 22.) Plaintiffs' response explained their efforts to serve the nine foreign defendants located in Mexico. And expecting that foreign service to involve delays, plaintiffs requested a six-month stay of proceedings.

(Doc. 23.)  Plaintiffs' response satisfied this court that plaintiffs were attempting prompt service on the foreign defendants.  But plaintiffs' response said nothing about plaintiffs' efforts to serve the four remaining U.S. defendants.  So, rather than grant plaintiffs' requested stay, this court ordered plaintiffs to show cause why this court should not dismiss the remaining U.S. defendants. (Doc. 25.)  Satisfied with plaintiffs' follow-up response, (Doc. 26), this court stayed proceedings until October 10, 2019. (Doc. 27.)  Since granting that stay, plaintiffs appear to have accomplished service on only 3 of the remaining 13 defendants:

| Remaining Defendants | |
|---|---|
| **"U.S. defendants"** (United States Citizens) | 1.  Buckley—summons outstanding <br> 2.  Banorte USA—summons outstanding <br> 3.  Banorte—summons <u>served</u> 8/12/19 (Doc. 28) <br> 4.  BBVA—summons outstanding |
| **"Foreign defendants"** (Mexican Citizens) | 5.  Mario—summons returned unexecuted (Doc. 41) <br> 6.  Banco Norte—summons <u>served</u> 5/22/19 (Doc. 43) <br> 7.  Reyes—summons returned unexecuted (Doc. 42) <br> 8.  Corona—summons outstanding <br> 9.  PRHometeus—summons outstanding <br> 10. VHM—summons returned unexecuted (Doc. 44) <br> 11. Gaberi—summons returned unexecuted (Doc. 40) <br> 12. Titanium—summons outstanding <br> 13. Banco Nacional—summons deemed <u>served</u> (Doc. 34) |

Now, proceedings are no longer stayed; plaintiffs have made no additional request for stay; Judge O'Hara's dismissal recommendation remains outstanding on the docket; and to date, plaintiffs have yet to prove service of process on 10 of the remaining 13 defendants.

This court lacks personal jurisdiction over a defendant if service of process is insufficient under Federal Rule of Civil Procedure 4. *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1273 (D. Kan. 2011).  Rule 4(m) generally limits the time to accomplish such service on nonforeign defendants to "within 90 days after the complaint is filed."

> If a defendant is not served within 90 days after the complaint is filed, the court— . . . on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff

shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. 4(m).

By its express terms, Rule 4(m) "does not apply to service in a foreign country." Nonetheless, the "time allowed for foreign service is not unlimited." *Nylock Corp. v. Fasterner World Inc.*, 396 F.3d 805, 806 (7th Cir. 2005) (explaining that "district courts need to be able to control their dockets"). "Rule 4(f)"—the rule governing foreign service—"authorizes a without-prejudice dismissal when the court determines in its discretion that the plaintiff has not demonstrated reasonable diligence in attempting service. . . . Good faith and reasonable dispatch are the proper yardsticks." *Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012); *Feliz v. MacNeill*, 493 F. App'x 128, 131 (1st Cir. 2012) ("[C]ourts have leave to dismiss for failure to serve abroad when a plaintiff is dilatory."); *Harris v. Orange S.A.*, 636 F. App'x 476, 485–86 (10th Cir. 2015) ("We thus join the majority of circuits to have considered the issue in holding that a plaintiff's complaint may be dismissed upon a showing that she failed to exercise diligence in attempting to effectuate service on a foreign defendant.").

Plaintiffs filed their complaint on September 7, 2018. Now, well over one year later, service remains unaccomplished on 10 defendants—meaning this court presently lacks personal jurisdiction over 10 of this case's remaining 13 defendants. *See Blackmon*, 769 F. Supp. 2d at 1273. As to U.S. defendants Buckley, Banorte USA, and BBVA, Rule 4(m)'s 90-day period for presumptively timely service passed long ago. As to foreign defendants Mario, Reyes, Corona, PRHometeus, VHM, Gaberi, and Titanium, plaintiffs' time to effect service is "not unlimited." *Nylock Corp.*, 396 F.3d at 806. When previously ordered, plaintiffs showed good cause to allow them until October 10, 2019, to accomplish service of process on these defendants. But now having failed to accomplish service on all defendants by that date or make any further request for stay, plaintiffs leave this court questioning whether service of process on the remaining defendants "is eminent or feasible." *MacGirvin v. Sook*, No. 08-2197-KHV, 2009 WL 424587, *2 (D. Kan. Feb. 19, 2009). Accordingly, the court orders plaintiffs to show cause, on or before March 11, 2020, why it should not adopt Judge' O'Hara's recommendation and dismiss

without prejudice for lack of service defendants Buckley, Banorte USA, BBVA, Mario, Reyes, Corona, PRHometeus, VHM, Gaberi, and Titanium.  Absent plaintiffs showing that continued diligence makes service of process eminent or feasible, dismissal will occur.

### IV. Defendant Banco Nacional's Motion to Dismiss & Plaintiffs' Motion to Amend

Having "affirmatively stated that it is not challeng[ing] the sufficiency of service of process" in this case, (Doc. 37, at 4 n.2), defendant Banco Nacional now seeks dismissal from this action for two other reasons. (Doc. 36.)  First, under Federal Rule of Civil Procedure 12(b)(2), defendant Banco Nacional argues that this court lacks personal jurisdiction over it.  Second, under Rule 12(b)(6), defendant Banco Nacional argues that plaintiffs state no "claim[s] upon which relief can be granted."

Plaintiffs elected to respond by seeking to amend their complaint, believing they could "allege additional facts to prove that this Court has personal jurisdiction over [d]efendant Banco Nacional . . . ." (Doc. 38, at 1.)  Federal Rule of Civil Procedure 15(a)(1)(B) afforded plaintiffs 21 days after receiving defendant Banco Nacional's motion to amend their complaint as a matter of right.  Before that date, plaintiffs requested and were given a two-week extension to file their amended complaint. (Docs. 38–39).  Within the extension period but outside Rule 15(a)(1)(B)'s 21-day limit, plaintiffs filed their amended complaint without first seeking the court's leave.  The court struck plaintiffs' amended complaint for plaintiffs' failure "to me[e]t the requirements of Fed. R. Civ. P. 15(a)(2)" by first obtaining either the opposing party's written consent or the court's leave. (Doc. 46); *see also Craft v. Middleton*, 524 F. App'x 395, 398 (10th Cir. 2013).  Plaintiffs now move for the court's leave to amend their complaint. (Doc. 47.)  Defendant Banco Nacional opposes, arguing that plaintiffs untimely propose only futile amendments. (Doc. 48.)

#### A.  Plaintiffs' Motion to Amend

##### 1.  Standard for Amendment under Rule 15(a)(2)

Rule 15(a)(2) directs courts to "freely give[]" leave to amend "when justice so requires."  This rule embodies an effort to maximize litigants' opportunities for resolution of their claims based on their

"merits rather than procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation omitted). But justice may not require affording amendment where the proposed amendment involves "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A party opposing amendment based on claimed futility bears the burden of establishing its claim. *Otte v. UMB Bank, N.A.*, No. 19-2351-CM-GEB, 2019 WL 6828652, at *6 (D. Kan. Dec. 13, 2019).

### 2. Plaintiffs' Proposed Amended Complaint

Plaintiffs seek to amend their complaint on the basis that "obtained additional information" "address[es] the jurisdictional issues mentioned in Defendant Banco Nacional['s] motion to dismiss." (Doc. 47, at 2.) This "obtained additional information" amounts to:

- Allegations aimed at connecting "Banco Nacional and/or Banamex," (Doc. 47-1, at ¶¶ 20–23), to specific corrective or punitive actions taken in 2013, 2014, 2015, and 2017, against Citigroup Inc. and/or its subsidiary Banamex USA for noncompliance with anti-money laundering practices. (*See* Doc. 47-1, at 4–5 n.1–4.)

- An allegation that, on July 3, 2018, the day after plaintiffs wired $4,325 to defendant Banco Nacional for defendant VHM's benefit, defendant Banco Nacional wired those funds to "be[] safely held" in "[p]laintiffs' bank account with [d]efendants Banco Norte and/or Banorte USA and/or Banorte. (Doc. 47-1, at 59–60.)

- And general allegations of misconduct attributed to defendant Banco Nacional (and other defendants); for example, plaintiffs allege defendant Banco Nacional:

    - "devised a timeshare scheme to defraud United States citizens."
      (Doc. 47-1, at ¶ 24.)

    - "accepted the [p]laintiffs' wired funds" on defendant VHM's behalf but "never informed . . . [p]laintiffs that [d]efendant VHM could not be found at the address provided" and "was likely an illegitimate business."
      (Doc. 47-1, at ¶ 58; *see also* ¶¶ 93–96, 105, 107.)

    - misled plaintiffs through "actions and assertions" into believing their wired funds "were being safely held."
      (Doc. 47-1, at ¶ 60; *see also* ¶¶ 104, 108–09.)

    - "worked together" with all other defendants to defraud plaintiffs.
      (Doc. 47-1, at ¶¶ 110–115.)

    o  offered plaintiffs their banking services "by receiving . . . and . . . forwarding" the plaintiffs' wired funds but then later denied plaintiffs "direct access" to their funds.

(Doc. 47-1, at ¶¶ 126–27.)

    o  "created false banking documents" and "engaged in wire transfers . . . on [plaintiffs'] behalf . . . to fraudulently induce" plaintiffs to wire additional funds.

(Doc. 47-1, ¶¶ 135–36.)

Considering these proposed additions, the court finds that justice does not require affording plaintiffs leave to amend for two reasons.

First, plaintiffs propose adding only information previously known or knowable to plaintiffs. "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984). Plaintiffs originally filed their complaint on September 7, 2018. Paragraphs 20–23 of the proposed amended complaint, however, seek to include information taken from generally available online sources that predate the original complaint. (*See* Doc. 47-1, at 4–5 n.1–4 (citing publications dated March 21, 2013; March 4, 2014; July 22, 2015; and May 22, 2017).) The July 3, 2018 wire transfer alleged in paragraph 59 also was known or knowable to plaintiffs. That transfer is memorialized in a bank statement attached to both plaintiffs' original and proposed amended complaints. (*See* Doc. 1-10, at 2; Doc. 47-10, at 2.) And a comparison between plaintiffs' original and now-proposed complaints shows that plaintiffs' remaining proposed allegations also allege no previously unknown or unknowable information. Plaintiffs offer no new facts, only additional general assertions based on old information. And they do so with "no adequate explanation for the delay." *Minter*, 451 F.3d at 1206.

Second, plaintiffs overpromise on their proposed allegations' ability to address jurisdictional issues involving defendant Banco Nacional. Courts may deny leave to amend where "the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). As discussed more fully below, plaintiffs' proposed amended complaint contains insufficient facts to

support this court's exercise of personal jurisdiction over defendant Banco Nacional. Accordingly, amendment would be futile.[2]

### B. Defendant Banco Nacional's Motion to Dismiss

The starting point for defendant Banco Nacional's motion to dismiss is this court's June 27, 2019 order dismissing defendant Banamex for lack of personal jurisdiction. Plaintiffs had argued that exercising personal jurisdiction over defendant Banamex was appropriate because defendant Banamex (1) "voluntarily agreed to subject itself to U.S. federal law and the laws of California" by both the terms of a credit card agreement offered on its website and by having a location in California, and also (2) "conspired with other defendants who directly solicited business from the [p]laintiffs while the [p]laintiffs resided in and were domiciled in Kansas." (Doc. 17, at 5–7.) This court rejected plaintiffs' arguments, specifically finding that plaintiffs had alleged no non-conclusory facts showing either a conspiracy or any connection between defendant Banamex and Kansas, apart from "the passive receipt of a single wire transfer in Mexico, without further involvement." (Doc. 21, at 11–13.) Because plaintiffs' original complaint makes materially indistinguishable allegations against defendant Banco Nacional, defendant Banco Nacional now argues that the same defects should afford it the same result.

Considering only plaintiff's original complaint, the court agrees. Where plaintiffs' original complaint alleges defendant Banamex did something, it also alleges defendant Banco Nacional responsible for the same conduct—including the very same July 2, 2018 wire transfer this court deemed inadequate to support personal jurisdiction. No additional allegations specific to defendant Banco Nacional's conduct appear in the complaint. Accordingly, the analysis supporting dismissal of defendant Banamex for lack of personal jurisdiction equally applies to and supports dismissal of defendant Banco Nacional.

---

[2] The court recognizes that plaintiffs propose amendments concerning defendants other than defendant Banco Nacional. In denying plaintiffs' motion to amend here, the court rules only that plaintiffs propose untimely and futile amendments in response to defendant Banco Nacional's motion to dismiss. If at any time following this order plaintiffs still desire to amend their original complaint to add allegations concerning other defendants, they may do so to the full extent authorized by Federal Rule of Civil Procedure 15.

Plaintiffs' proposed amended complaint leads the court to the same result.

### 1. Standard for Dismissal under Rule 12(b)(2)

At this litigation's early stage, plaintiffs owe this court only "a prima facie showing" that it possesses personal jurisdiction over defendant Banco Nacional. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The court takes as true "all well-pled (that is, plausible, non-conclusory, and non-speculative)" allegations made in plaintiffs' operative complaint. *Id.* For this court to exercise personal jurisdiction over nonresident defendant Banco Nacional in this diversity action, plaintiffs' well-pled allegations must show that defendant Banco Nacional has (1) "minimum contacts" with Kansas (2) such that maintaining the suit here conforms with "traditional notions of fair play and substantial justice."[3] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159–60. "Minimum contacts" may take either a "general" (suit-unrelated) or "specific" (suit-related) form. *Id.* at 1160 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)). But here, plaintiffs show neither form of "minimum contacts" between defendant Banco Nacional and Kansas.[4]

### 2. General Personal Jurisdiction

Exercising "general" personal jurisdiction here depends on plaintiffs showing that defendant Banco Nacional maintains "continuous and systematic general business contacts" with Kansas. *Old Rep. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903–04 (10th Cir. 2017) (quotations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amendable to [general,] all-purpose jurisdiction there." *Daimler AG*, 571 U.S. at 137. For a company like defendant Banco Nacional, the paradigmatic jurisdiction-enabling affiliation is either its "place of incorporation [or] principal place of business." *Id.* But if incorporated or doing its principal business outside the forum, the court must ask:

---

[3] Because courts construe the Kansas long-arm statute "liberally so as to allow jurisdiction to the full extent permitted by due process, [this court] proceed[s] directly to the constitutional [due process] issue," *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998), forgoing the separate analysis ordinarily necessary concerning whether "jurisdiction is legitimate under the [forum state's] laws." *Emp'rs Mut. Cas. Co.. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[4] As such, the court need consider neither: (1) whether making defendant Banco Nacional defend this suit in Kansas offends "traditional notions of fair play and substantial justice," nor (2) defendant Banco Nacional's arguments for dismissal under Rule 12(b)(6). *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007).

(1) whether [defendant Banco Nacional] solicits business in [Kansas] through a local office or agents;

(2) whether [defendant Banco Nacional] sends agents into [Kansas] on a regular basis to solicit business;

(3) the extent to which [defendant Banco Nacional] holds itself out as doing business in [Kansas], through advertisements, listings or bank accounts; and

(4) the volume of business conducted in [Kansas] by [defendant Banco Nacional].

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996) (quotations omitted). Plaintiffs may sue defendant Banco Nacional under this court's "all-purpose" jurisdiction only if those factors show that defendant Banco Nacional affiliates with Kansas "so continuous[ly] and systematic[ally] as to render [it] essentially at home in [Kansas]." *Daimler AG*, 571 U.S. at 138–39 (quotations omitted).

Plaintiffs' proposed amended complaint alleges no such affiliations. Plaintiffs do not allege that defendant Banco Nacional incorporates or does its principal business within Kansas. Nothing within the proposed amended complaint, its attachments, or the online publications referenced in paragraphs 20–23's footnotes shows that defendant Banco Nacional solicits business in Kansas through agents located in or regularly sent to Kansas. Nothing shows that defendant Banco Nacional uses Kansas-based advertisements, listings, or bank accounts to hold its business out specifically to Kansans.[5] And nothing shows that Kansans account for a meaningful volume of defendant Banco Nacional's business. Plaintiffs allege only that defendant Banco Nacional "is a Mexican company" located in "Mexico," (Doc. 47-1, at ¶16.), who acted against plaintiffs' interests. (*See, e.g.*, Doc. 47-1, at ¶¶ 58, 60, 104–15, 126–27, 135–36.) Accordingly, plaintiffs lack prima-facia proof that defendant Banco Nacional affiliates with Kansas

---

[5] Similarly, the complaint offers no allegations showing that defendant Banco Nacional "conduct[s] commercial transactions on a sustained basis with a substantial number of [Kansas] residents" using a website "intentionally direct[ed]" at—not merely "accessible" in—Kansas. *Shrader*, 633 F.3d at 1240, 1243 (discussing the "quite high" bar caselaw sets for basing general personal jurisdiction on online commercial activity); *see also Dtex,LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 645 (D.S.C. 2005) (holding that a South Carolina corporation's "customer-initiated bank-to-bank wire transfers" involving a Mexican bank and its Texas-based subsidiary "d[id] not establish the 'continuous and systematic' purposeful presence necessary to establish [general] personal jurisdiction.").

"so continuous[ly] and systematic[ally] as to render [it] essentially at home in [Kansas]." *Daimler AG*, 571 U.S. at 138–39 (quotations omitted).

### 3. Specific Personal Jurisdiction

To support "specific" personal jurisdiction, plaintiffs must show that their injuries "arise out of" activities defendant Banco Nacional "purposefully directed" at Kansas. *Old Rep. Ins. Co.*, 877 F.3d at 904–05 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). To be "purposefully directed," defendant Banco Nacional's own conduct—not another party's or third-person's "unilateral activity"—must have proximately created a "substantial"—i.e., not "random, fortuitous, or attenuated"—connection with Kansas. *Burger King Corp.*, 471 U.S. at 475 (quotations omitted). A "nexus" must then connect any such Kansas-directed activity to plaintiffs' claims. *Emp'rs Mut. Cas.*, 618 F.3d at 1160. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities . . . ." *Old Rep. Ins. Co.*, 877 F.3d at 908.

Plaintiffs' proposed amended complaint still lacks well-pled allegations of suit-related conduct by defendant Banco Nacional purposefully directed at Kansas. Again, the new allegations appearing in plaintiffs' proposed complaint amount to:

- Allegations aimed at connecting "Banco Nacional and/or Banamex," (Doc. 47-1, at ¶¶ 20–23), to specific corrective or punitive actions taken in 2013, 2014, 2015, and 2017, against Citigroup Inc. and/or its subsidiary Banamex USA for noncompliance with anti-money laundering practices. (*See* Doc. 47-1, at 4–5 n.1–4.)

- An allegation that, on July 3, 2018, the day after plaintiffs wired $4,325 to defendant Banco Nacional for defendant VHM's benefit, defendant Banco Nacional wired those funds to "be[] safely held" in "[p]laintiffs' bank account with [d]efendants Banco Norte and/or Banorte USA and/or Banorte. (Doc. 47-1, at 59–60.)

- And general allegations of misconduct attributed to defendant Banco Nacional (and other defendants).

None of these "address the jurisdictional issues mentioned in" either this court's order dismissing defendant Banamex or defendant Banco Nacional's motion to dismiss. (Doc. 47, at 2.)

To begin, the general noncompliance alleged in paragraphs 20–23 lack any Kansas-directed conduct or nexus to plaintiffs' causes of action. Taking paragraphs 20–23 as true,[6] defendants "Banco Nacional and/or Banamex" entered into two consent orders—one in 2012 with the F.D.I.C. and the California Department of Financial Institutions and another in 2013 with the Federal Reserve System's Board of Governors—aimed at improving adherence to anti-money laundering practices. By 2015, however, noncompliance led defendants' parent company to end defendants' U.S. operations. And by 2017, noncompliance led defendants to forfeit $97,000,000 to the U.S. Department of Justice. Specifics of the conduct leading to these actions is not alleged by plaintiffs and underdeveloped by plaintiffs' referenced sources. At best, these allegations show some repeated noncompliance with anti-money laundering practices that predates this suit. But nothing about the noncompliance identified in paragraphs 20–23's allegations and footnotes appears Kansas-directed, let alone purposefully directed at Kansas by defendant Banco Nacional. The additional required nexus to plaintiffs' claims also is missing. Plaintiffs' claims against defendant Banco Nacional arise from its involvement in two July 2018 wire transfers. But no non-speculative nexus connects paragraphs 20–23 to those transfers.

Turning to those transfers, the newly-alleged July 3, 2018 wire transfer changes nothing about the non-purposeful nature of defendant Banco Nacional's banking contacts with plaintiffs. The purposeful direction requirement ensures that defendant Banco Nacional will not be haled into Kansas "'as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person.'" *Old Rep. Ins. Co.*, 877 F.3d at 904–05 (quoting *Burger King Corp.*, 471 U.S. at 475). Plaintiffs allege two wire transfers involving defendant Banco Nacional. First, plaintiffs wired $4,325 to a "supposed bank account" for defendant VHM at defendant Banco Nacional. (Doc. 47-1, at ¶¶ 56, 59.) That July 2, 2018 transfer occurred based on "requests made by [defendants] M&M, Mario,

---

[6] Defendant Banco Nacional argues that the entities in paragraphs 20–23's referenced sources are in fact entities distinct from itself, making it "incorrect and misleading" for paragraphs 20–23 to name "Banco Nacional" at all. (Doc. 48, at 4–5 n.4.) Generally, this court "must resolve any factual disputes in the plaintiff[s'] favor." *Shrader*, 633 F.3d at 1239. Whether or not plaintiffs correctly name defendant Banco Nacional, moreover, paragraph 20–23's allegations fail for the more fundamental reasons discussed above.

and Buckley." (Doc. 47-1, at ¶ 56.) Second, defendant Banco Nacional wired that same amount the next day to plaintiffs' account with another Mexico- or New York-based bank-defendant. That transfer occurred on defendant VHM's behalf without plaintiffs' "written authorization" but "for the direct benefit of [p]laintiffs." (Doc. 47-1, at ¶ 59.) These allegations show that defendant Banco Nacional may have "offered [its] services to [p]laintiffs by receiving . . . and forwarding" their funds. (Doc. 47-1, at ¶ 126). But neither of these transfers—or any other of plaintiffs' well-pled allegations—show that defendant Banco Nacional reached out into Kansas for plaintiffs' business. Neither transfer occurred at defendant Banco Nacional's direction; instead, other parties' "unilateral activity" directed the funds to and through defendant Banco Nacional. And the second transfer, at best, has only an "attenuated" Kansas connection.

From this court's review, plaintiffs plead an even less convincing case for exercising personal jurisdiction than that rejected in *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292 (10th Cir. 1999). In *Soma*, a Utah-based corporate-plaintiff (Soma) alleged that an international banking institution (SCB) wrongfully transferred its funds from a Hong Kong-based bank account to a Nevada account. *Id.* at 1294–95. Supporting its claim for the court exercising personal jurisdiction over SCB, Soma established certain contacts with SCB:

> [T]he record reveals only that SCB opened an account at its Hong Kong branch for Soma, created various internal documents evidencing that account's existence, corresponded by fax and letter with Soma concerning that account, and received and distributed funds into and out of that account, including the final transfer of approximately $250,000 to a bank in Nevada.

*Id.* at 1299. "Additionally, . . . and not in connection with Soma's account, SCB maintained a website." *Id.* at 1298. The Tenth circuit found those contacts "insufficient to show purposeful direction for two reasons: (1) based on the record, the plaintiff failed to show that the defendant solicited the plaintiff's business, and (2) the limited number of communications concerning the account did not suffice." *Old Rep. Ins. Co.*, 877 F.3d at 913; *see also Soma*, 196 F.3d at 1298–99. Here too, the record fails to show that defendant Banco Nacional solicited plaintiffs' funds. And plaintiffs allege no communications—

account-related or otherwise—that would suggest defendant Banco Nacional reached out beyond Mexico and "create[d] a continuing relationship and obligations with" plaintiffs. *Old Rep. Ins. Co.*, 877 F.3d at 913.

Plaintiffs' remaining general allegations of misconduct also fail to bring defendant Banco Nacional's conduct within this court's jurisdictional reach. Plaintiffs "cannot be the only link between" defendant Banco Nacional and Kansas. *Id.* at 907 (quoting *Walden v. Fiore*, 571 U.S 277, 285 (2014)). But that, essentially, is all that plaintiffs show. Defendant Banco Nacional's alleged misconduct in Mexico is linked to Kansas only by the "random" and "fortuitous" occurrence that other defendants— not defendant Banco Nacional—convinced two Kansans to wire money to and through its bank. (*See* Doc. 47-1, at ¶¶ 41–42, 56, 59.)

Those other defendants' contacts with Kansas, if any, could afford this court a possible basis to exercise personal jurisdiction over defendant Banco Nacional, but plaintiffs still offer no "prima facie showing" of "more than bare allegations that a conspiracy existed." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007). Plaintiffs' proposed amended complaint contains the same conspiracy-count allegations this court already rejected. (*Compare* Doc. 21, at 12 (discussing Doc. 1, at 19) *with* Doc. 47-1, at 26.) Even incorporating "each and every allegation set forth" in plaintiffs' proposed amended complaint, (Doc. 47-1, at ¶ 154.), plaintiffs still plead no additional *facts* showing defendant Banco Nacional set its mind to and acted with others for the purpose of defrauding plaintiffs. *See Stoldt v. City of Toronto*, 678 P.2d 153, 161–62 (Kan. 1984) (listing elements of civil conspiracy claim). The best of plaintiffs' allegations show "parallel action . . . or inaction" only, which "does not necessarily indicate an agreement to act in concert."[7] *Gowadia v. Stearns*, 596 F. App'x 667, 671–72 (10th Cir. 2014) (quotation omitted). The worst of plaintiffs' allegations plead more unsupported conclusions.[8]

---

[7] *Compare, e.g.*, Doc. 47-1, at ¶ 57 (alleging that defendants M&M, Mario, and Buckley assured plaintiffs that defendant VHM was a legitimate business) *with* ¶ 58 (alleging that defendant Banco Nacional "never informed . . . [p]laintiffs that [d]efendant VHM . . . . was likely an illegitimate business.") and ¶ 127 (alleging that defendant Banco Nacional "failed to warn . . . [p]laintiffs of suspicious activity or wire fraud schemes.").

[8] *See, e.g.*, Doc. 47-1, at ¶ 24 (defendants "devised a timeshare scheme to defraud United States citizens"); ¶¶ 110–15 (defendants "worked together" to defraud plaintiffs).

*See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 790 (10th Cir. 2013) ("[Plaintiff's] bare allegation of a 'collusive agreement to retaliate' is deficient in the absence of specific facts showing an agreement and concerted action amongst these defendants."). And the worst of those conclusory allegations plead conclusions that contradict other well-pled facts.[9]

One final defect undermines plaintiffs' proposed amended complaint. Where plaintiffs allege fraud, they omit necessary information concerning either "'the time, place and contents of the false representation, the identity of the party making the false statements [or] the consequences thereof.'"[10] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236–37 (10th Cir. 2000) (stating the required information for satisfying Fed. R. Civ. P. 9(b)'s directive that "the circumstances constituting fraud . . . shall be stated with particularity.").

\* \* \*

Combined, these deficiencies leave the court with no well-pled allegations that defendant Banco Nacional has "minimum contacts" with Kansas. Defendant Banco Nacional is far from "essentially at home" in Kansas. And its actions in Mexico "did not create sufficient contacts with [Kansas] simply because [it] allegedly directed [its] conduct at plaintiffs whom [it] knew had [Kansas] connections." *Walden*, 571 U.S. at 289. Accordingly, this court cannot exert personal jurisdiction over defendant Banco Nacional based on plaintiffs' original or proposed amended complaints.

---

[9] *Compare, e.g.*, Doc. 47-1, at ¶ 41 (alleging the nonconclusory fact that the requests that plaintiffs pay various fees came from defendant M&M) and ¶ 57 (alleging the nonconclusory fact that defendants M&M, Mario, and Buckley assured plaintiffs defendant VHM was a legitimate business) *with* ¶¶ 125–26 (alleging that defendant Banco Nacional "used" defendant VHM as a "sham compan[y] . . . to fraudulently induce" plaintiffs to prepay sales expenses, with no supporting factual details other than alleging defendant Banco Nacional "receiv[ed]" and "forward[ed]" the funds).

[10] *See, e.g.*, Doc. 47-1, at ¶ 60 (defendants misled plaintiffs through unspecified "actions and assertions"); ¶ 93 (defendants "falsely represented" defendants VHM, Gaberi, and Titanium "were legitimate Mexican businesses"); ¶ 125 (defendants "used sham companies . . . to fraudulently induce" plaintiffs); ¶¶ 135–36 (alleging that defendants "created false banking documents" and "engaged in wire transfers . . . to fraudulently induce" plaintiffs to wire additional funds).

**IT IS THEREFORE ORDERED** that plaintiffs' Motion For Temporary Injunction (Doc. 3) is denied.

**IT IS FURTHER ORDERED** that plaintiffs show cause, on or before March 11, 2020, why this court should not dismiss defendants Buckley, Banorte USA, BBVA, Mario, Reyes, Corona, PRHometeus, VHM, Gaberi, and Titanium for lack of service. Plaintiffs must show that their continued diligence makes service of process eminent or feasible; otherwise, dismissal will occur as recommended in Judge O'Hara's July 1, 2019 Order to Show Cause (Doc. 22).

**IT IS FURTHER ORDERED** that plaintiffs' Motion to Amend Pleadings (Doc. 47) is denied.

**IT IS FURTHER ORDERED** that defendant El Banco Nacional de Mexico's Motion to Dismiss (Doc. 36) is granted. Counts II, IV, V, VI, VII, and VIII are dismissed against defendant Banco Nacional only. Defendant Banco Nacional is terminated as a party in this case.

Dated this <u>10th</u> day of <u>February</u>, 2020, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**