IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELOY VELASCO BRISENO, and
JANA HARRIS VELASCO

    *Plaintiffs,*

vs.

    Case No. 18-2482-EFM-JPO

MARKETING AND MANAGEMENT
SOLUTIONS, LLC, et al.,

    *Defendants.*

**MEMORANDUM AND ORDER**

This Order resolves what remains of Plaintiffs' suit to recover funds lost to an alleged timeshare-purchasing scam. Plaintiffs Eloy Velasco Briseno and Jana Harris Velasco (the "Velascos") move for the Court to enter default judgment against Defendant Banco Mercantil del Norte, S.A. ("Banco Norte"), the only yet-undismissed defendant of this once 16-defendant suit. Banco Norte, in turn, moves for the Court to (1) set aside the default entered against it by the clerk and (2) dismiss the Velasco's complaint for lack of service of process and for lack of personal jurisdiction. Lacking a basis to exercise personal jurisdiction over Banco Norte, the Court denies the Velasco's Amended Motion for Default Judgment (Doc. 55) and grants Banco Norte's Combined Motion To Dismiss, Set Aside Default Judgment (Doc. 59).

**I.    Factual and Procedural Background[1]**

---

[1] The Court takes the following facts from the Velasco's complaint and its attached exhibits, the parties' briefing, and the parties' statements at the Court's July 22, 2020 hearing. In this account, the Court has resolved any

In June 2018, the Velascos, a married couple residing in Kansas, received an unsolicited offer from a purported representative of Defendant Marketing & Management Solutions, LLC ("M&M") to purchase their timeshare property located in Puerto Vallarta, Mexico. Ultimately, that offer led to a purchase agreement that resulted in the Velascos wiring $101,547 in purported sale expenses to various Mexican banks, including sums to Banco Norte. In return, however, the Velascos received neither the agreed upon $230,250 purchase price nor the $101,547 of supposedly reimbursable sales expenses. Earlier orders more fully detail those events and the identities and actions of this case's 16 named defendants.[2] Here, however, the Court focuses on only Banco Norte's involvement in the alleged fraud, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy claims stated against it in the Velasco's complaint.

Banco Norte is a banking and financial services company headquartered in Monterrey, Nuevo León, Mexico. Purportedly to facilitate the purchase of the Velasco's timeshare, Defendant M&M opened an escrow account in the Velasco's name at Banco Norte. Defendant M&M funded that account with the represented purchase price. Then, on Defendant M&M's request, the Velascos twice wired money from their Kansas bank account to other defendants' accounts at Banco Norte. On June 15, 2018, the Velascos wired $5,325 to Banco Norte. On June 22, the Velascos wired $29,932.50 to Banco Norte. The Velascos then made three like transfers to other Mexican banks. On July 12, between the Velasco's fourth and fifth wire transfer, the Velascos

---

factual disputes arising from well-pled facts in the Velasco's favor. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[2] *See* Docs. 21 & 49.

received a purported account statement for their Banco Norte account.[3]  The statement represented an account balance of $308,688.38, an amount comprised of deposits for the timeshare purchase price and the reimbursable sales expenses already paid by the Velasco's initial four wire transfers. On July 24, following the Velasco's fifth wire transfer, the Velascos received a letter purportedly from Banco Norte.[4]  The July 24 letter advised the Velascos that "serious [account] irregularities" noticed by Banco Norte's "Fraud department" would require the Velascos to pay an $82,949.25 "insurance policy."[5]  According to the letter, Banco Norte would then either (1) use that money to provide the Velascos "legal assistance", in the event the account ended up seized, or (2) reimburse the funds upon verification of the legality of the Velasco's account.[6]  Ultimately, the Velascos never purchased this purported "insurance policy" and have failed to recover any funds from the Banco Norte escrow account.

On September 7, 2018, the Velascos filed this suit.  On May 22, 2019, the Mexican Central Authority served the Velasco's complaint on an employee of Banco Norte's Cancun Las Palmas office.  Proof of that executed service, however, did not reach the Velascos until late October or early November 2019.  On November 4, 2019, the Velascos filed proof of service on Banco Norte. Lacking an answer or response from Banco Norte, the Velascos earned a clerk's entry of default on March 18, 2020.  On March 24, the Velascos filed an amended motion seeking default judgment

---

[3] At the Court's July 22, 2020 hearing, Banco Norte's counsel disputed the authenticity of this account statement as a genuine Banco Norte document.  The Court, however, must "resolve any factual disputes in the [Velasco's] favor." *Shrader*, 633 F.3d at 1239.  Thus, for this Order's purposes, the Court assumes the account statement authentic.

[4] Banco Norte's counsel also disputed the July 24, 2018 letter's authenticity.  Again, for this Order's purposes, the Court assumes the letter authentic. *See id.*

[5] Doc. 1-13, 2.

[6] Doc. 1-13, 2.

against Banco Norte. Prior to the date initially set for hearing on that default-judgment motion, Banco Norte filed its combined motion to dismiss and set aside the clerk's entry of default. A hearing on both parties' motions occurred July 22, 2020.

## II.     Legal Standard

As an important threshold issue to the parties' motions, this Court must first examine its jurisdictional authority over Banco Norte. Banco Norte's motion to dismiss, of course, directly raises the issue. And the Velasco's motion for default judgment also imposes on the Court "an affirmative duty to look into its personal . . . jurisdiction in order to determine whether it has the power to enter default judgment."[7]

The Fourteenth Amendment's Due Process Clause constrains this Court's authority to bind Banco Norte to any of its judgments.[8] In opposing Banco Norte's motion to dismiss under Fed. R. Civ. P. 12(b), the Velascos bear the burden; their "pleadings (with attachments) and affidavits" must make "a prima facia showing" that the Court possesses personal jurisdiction over Banco Norte.[9] Toward that showing, the Court takes as true "all well-pled (that is, plausible, non-conclusory, and non-speculative)" allegations made by the Velascos.[10]

## III.     Analysis

For the Court to exercise personal jurisdiction over nonresident defendant Banco Norte in this diversity action, the Velasco's well-pled allegations must show that Banco Norte has (1)

---

[7] *Unum Life Ins. Co. of Am. v. Paisley*, No. 14-2315-CM-KGG, 2014 WL 5390243, at *1 (D. Kan. Oct. 22, 2014) (citing *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[8] *Walden v. Fiore*, 134 571 U.S., 283 (2014) (citation omitted).

[9] *Shrader*, 633 F.3d at 1239.

[10] *Id.*

"minimum contacts" with Kansas (2) such that maintaining the suit here conforms with "traditional notions of fair play and substantial justice."[11]  "Minimum contacts" may take either a "general" (suit-unrelated) or "specific" (suit-related) form.[12]  Here, the Velascos argue that both forms of contacts exists.  The Court disagrees.

### A.     General Personal Jurisdiction

Ordinarily, exercising general personal jurisdiction here would depend on the Velascos showing that Banco Norte maintains "general business contacts" with Kansas so "continuous and systematic" as to make it "essentially at home" in Kansas.[13]  The Velascos, however, make no such argument.  Instead, the Velascos urge that general personal jurisdiction exists over Banco Norte, not based on its own contacts with Kansas, but based on its subsidiary's, UniTeller's, alleged contacts with Kansas.

To impute any of UniTeller's Kansas contacts to Banco Norte, the Velascos must first show that UniTeller operates as Banco Norte's "alter ego."[14]  This requires the Velascos to show that applying "Kansas law would result in 'piercing the corporate veil or imposing liability through

---

[11] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010).  Because courts construe the Kansas long-arm statute "liberally so as to allow jurisdiction to the full extent permitted by due process, [this Court] proceed[s] directly to the constitutional [due process] issue," *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998), forgoing the separate analysis ordinarily necessary concerning whether "jurisdiction is legitimate under the [forum state's] laws." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159.

[12] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1160 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)).

[13] *Old Rep. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903–04 (10th Cir. 2017) (quotations omitted).

[14] *Lemaster v. Collins Indus., Inc.*, No. 11-CV-2128-JTM, 2011 WL5966911, at *3 (D. Kan. Nov. 29, 2011) (citing *Doughty v. CSX Transp., Inc.*, 258 Kan. 493, 499, 905 P.2d 106, 111 (1995))).
   Of course, the Velascos must also show that UniTeller itself has the requisite continuous and systematic general business contacts to make it essentially at home in Kansas.  Whatever UniTeller's contacts with Kansas may be, here, the Velascos offer an inadequate basis to attribute those contacts to Banco Norte.  As such, the Court need not decide whether UniTeller is essentially at home in Kansas.

agency principles.'"[15]  Kansas law directs courts to pierce the corporate veil "reluctantly and cautiously."[16]  Whether UniTeller operates as Banco Norte's alter ego depends on "whether, from all the facts and circumstances, it is apparent that the relationship between [Banco Norte] and [UniTeller] is so intimate, [Banco Norte's] control over [UniTeller] is so dominating, and the business and assets of the two are so mingled" that "allowing the legal fiction of a separate corporate structure would result in injustice toward the [Velascos]."[17]  In making the alter ego determination, this Court must consider whether:

(1) Banco Norte owns all or a majority of UniTeller's capital stock;

(2) Banco Norte and UniTeller have common directors or officers;

(3) Banco Norte finances UniTeller;

(4) Banco Norte subscribed to all of UniTeller's capital stock or otherwise caused its incorporation;

(5) UniTeller has grossly inadequate capital;

(6) Banco Norte pays UniTeller's salaries, expenses, or losses;

(7) UniTeller has substantially no business expect with Banco Norte or no assets except those conveyed to it by Banco Norte;

(8) Banco Norte's papers and its officers' statements refer to UniTeller as its subsidiary, department or division;

(9) UniTeller directors or executives do not act independently in Uniteller's interest but take direction from Banco Norte; and

(10) The formal legal requirements of UniTeller as a separate and independent corporation are not observed.[18]

---

[15] *Id.* (quoting *Luc v. Karuse Werk GMBH & Co.*, 289 F.Supp.2d 1282, 1288 (D. Kan. 2003)).

[16] *Amoco Chems. Corp. v. Bach*, 222 Kan. 589, 593, 567 P.2d 1337, 1341 (1977).

[17] *Doughty*, 258 Kan. at 500, 905 P.2d at 111.

[18] *Id.*, 258 Kan. at 499, 905 P.2d at 111; *see also Fleetwood Enters. v. Coleman Co.*, 37 Kan. App. 2d 850, 867, 161 P.3d 765, 778–79 (2007); *Lemaster*, 2011 WL5966911, at *3 (citing *Doughty* and other Kansas and Tenth Circuit cases).

Though "no single factor or combination of factors is necessarily conclusive," the fact "that two corporations may have stockholders or officers in common, that one is the parent of the other, that the parent selects from its own directors and officers the majority of the directors of the other, and that a parent finances a subsidiary is, without more, insufficient to warrant treating the two corporations as one."[19]

At best, the Velascos make a prima facie showing of only a handful of factors. The Velasco's allegations and supporting documents show: Banco Norte acquired 100% of UniTeller; UniTeller's website holds itself out as "part of" and "a subsidiary of" Banco Norte; Banco Norte's 2018 Annual Report represents that it "operate[s] . . . UniTeller;" and Banco Norte's 2019 Annual Report calls UniTeller its "remittance division."[20] But "[m]ere ownership"[21] and the fact that the companies hold themselves out as being in a parent-subsidiary relationship,[22] where the Banco Norte "operates" to some undefined degree UniTeller's activities,[23] do not, without more, lend themselves to the conclusion that Banco Norte so controls and dominates UniTeller that "UniTeller no longer has a will, mind, or existence of its own."[24] As such, the Court cannot say that treating

---

[19] *Doughty*, 258 Kan. at 504–05, 905 P.2d at 114.

[20] Doc. 63, 12–13.

[21] *Farha v. Signal Cos., Inc.*, 216 Kan. 471, 479, 532 P.2d 1330, 1337 (1975) ("The law is clear that mere ownership of all the stock of a subsidiary will not, in and of itself, subject the parent corporation to the jurisdiction of the state where the subsidiary is doing business.").

[22] *See Noland v. Enter. Holdings, Inc.* No. 10-2140-JWL, 2010 WL 11627581, at *3 (D. Kan. Aug. 16, 2010) ("'The existence of a parent-subsidiary relationship is insufficient by itself to establish personal jurisdiction over a parent who does not conduct business within the state.'").

[23] *See id.* at *5 (deciding that "sweeping statements" on a parent-company's website concerning its operation's scope "are insufficient to establish that [the parent company] has actual control over each of its subsidiaries.")

[24] *Farha*, 216 Kan. at 480, 532 P.2d at 1338.

UniTeller and Banco Norte separately deals the Velascos an injustice.[25] UniTeller's contacts, therefore, fail to bring Banco Norte within this Court's jurisdictional authority.

## B.  Specific Personal Jurisdiction

Alternatively, the Velascos argue that specific personal jurisdiction over Banco Norte arises from its involvement in the alleged fraud, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy claims. To support specific personal jurisdiction, the Velascos must show that their injury "arise[s] out of or relate[s] to" activities Banco Norte "purposefully directed" at Kansas.[26] The Velasco's injury "arise[s] out of or relate[s] to" Banco Norte's conduct only if a "nexus" connects Banco Norte's Kansas-directed conduct to the Velasco's claims.[27] "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities . . . ."[28] To be "purposefully directed," Banco Norte's own conduct—not another party's or third-person's "unilateral activity"—must have proximately created a "substantial"—i.e., not "random, fortuitous, or attenuated"—connection with Kansas.[29]

The Velascos allege six suit-related interactions involving Banco Norte. Allegedly, Banco Norte: (1) created a bank account, at M&M's or its agent's direction, for the Velasco's benefit; (2) accepted the Velasco's June 15 and 22 wire transfers; (3) processed transfers from other Mexican

---

[25] *Doughty*, 258 Kan. at 500, 905 P.2d at 111.

[26] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

[27] *Emp'rs Mut. Cas.*, 618 F.3d at 1160.

[28] *Old Rep. Ins. Co.*, 877 F.3d at 908.

[29] *Burger King Corp.*, 471 U.S. at 475 (quotations omitted).

banks and Banco Norte accounts to the Velasco's account;[30] (4) provided the Velascos an account statement, dated July 12; (5) solicited additional money from the Velasco's through the July 24 letter; and (6) denied the Velascos access to their funds.[31]

Initially, the Velasco's injury arises from only certain of these contacts. In determining whether a nexus connects these contacts to the Velasco's claims, generally one of two tests applies: (1) "but-for" causation, or (2) proximate cause.[32]

> But-for causation means "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." "[C]onsiderably more restrictive" is proximate causation, which turns on "whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."[33]

Affording the Velasco's the benefit of the less-restrictive but-for causation test, two contacts fall outside the causal chain. The Velascos suffered monetary loss when they wired funds to Mexico, which, allegedly, Banco Norte ultimately withheld. No injury occurred, however, from the July

---

[30] In their briefing and at the July 22, 2020 hearing, the Velascos assert that Banco Norte actually "unilaterally wired" the reimbursable funds into the Velasco's escrow account. *See* Doc. 63, 17–19 (¶¶ 103 & 112). This assertion is overly implausible and speculative. Neither the Velasco's complaint nor any representations made by their counsel at the July 22, 2020 hearing afford this Court a plausible explanation for accepting the assertion that Banco Norte initiated these transfers, particularly those from accounts maintained at other Mexican banks. At best on this record, the well-pled allegations establish that Banco Norte did nothing more than passively process transfers initiated by others. *See Shrader*, 633 F.3d at 1239 (explaining that courts take as true only "well-pled (that is, plausible . . . and non-speculative) facts").

[31] Doc. 63, 19 (¶ 112). One minor note on this sixth asserted contact. Banco Norte, according to the Velascos, denied them access to their funds when it failed to honor a disbursement form that they completed on July 3, 2018. *See* Doc. 63, 18–19 (¶¶ 104 & 112). M&M allegedly sent the Velasco's this form. *See* Doc. 1, 10 (¶ 43). On its face, the disbursement form is an M&M-prepared document—not an official Banco Norte form. *See* Doc. 1-8, 1 (Exhibit H). As such, no nonspeculative factual basis connects this form to Banco Norte, let alone lends itself to a finding that Banco Norte received but refused the disbursement request. *See Shrader*, 633 F.3d at 1239 (explaining that courts take as true only "well-pled (that is, . . . non-speculative) facts"). Still, the Court accepts as true the Velasco's allegation that "despite demand from the Plaintiffs, Defendants have failed to refund Plaintiffs' money." Doc. 1, 12 (¶ 52).

[32] *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, --- F.3d ---, 2020 WL 4743833, at *9 (10th Cir. 2020) ("This court on several occasions has declined to choose between but-for and proximate causation, finding that neither test was outcome determinative given the facts at hand.").

[33] *Id.*

12 and 24, 2018 communications. At the July 22, 2020 hearing, the Velasco's counsel agreed that no injury arose from the July 12 account statement. As to the July 24 letter, the Velascos wired all monies prior to receiving that letter. Because the Velascos wired no additional monies in response to the July 24 letter, no injury arose from this alleged contact.

As to those remaining contacts, Banco Norte directed none of those actions purposefully at Kansas. In this case's intentional-tort context, "purposeful direction" requires: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state."[34] Banco Norte created an account for the Velasco's benefit at M&M's direction. It passively received the Velasco's June 15 and 22, 2018 wire transfers. And on the well-pled record, it automatically forwarded funds directed by others to the Velasco's account. None of these actions, however, occurred at Banco Norte's direction; instead, other parties' "unilateral activity" directed the funds to and through accounts at Banco Norte.[35] These actions, unlike the alleged withholding of funds, reflect no intentional conduct on Banco Norte's part.

Still, withholding of funds and all, Banco Norte aimed none of these contacts expressly at Kansas. "[T]he mere foreseeability" that Banco Norte's actions might cause injury to the Velascos in Kansas is not enough.[36] The Velascos "cannot be the only link between" Banco Norte and

---

[34] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020).

[35] *See Burger King Corp.*, 471 U.S. at 475.

[36] *Wyles v. Brady*, No. 19-1142, 2020 WL 4199727, at *3 (10th Cir. July 22, 2020) (declining to find purposeful direction where no evidence showed that the acts arguably intended to cause harm in the forum state were "directed at the forum state (as opposed to merely at the plaintiff in the forum state) or caused any harm to him in [the forum state]."); *see also Walden*, 571 U.S. at 289 ("[A foreign defendant's] actions [outside the forum] d[o] not create sufficient contacts with [the forum] simply because [the defendant] allegedly directed his conduct at plaintiffs whom he knew had [forum] connections.").

Kansas.[37] But that, essentially, is all the Velascos show. Banco Norte's alleged receipt and withholding of funds in Mexico is linked to Kansas only by the "random" and "fortuitous" occurrence that other defendants—not Banco Norte itself—convinced two Kansans to wire money to its bank; purposeful direction requires a more substantial, Banco Norte-created Kansas connection.[38]

Ultimately, the Velasco's still present the sort of case for exercising personal jurisdiction that the Tenth Circuit rejected in *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292 (10th Cir. 1999). In *Soma*, a Utah-based corporate-plaintiff, Soma, alleged that an international banking institution, SCB, wrongfully transferred its funds from a Hong Kong-based bank account to a Nevada account.[39] Supporting its claim for the court exercising personal jurisdiction over SCB, Soma established certain contacts with SCB:

> [T]he record reveals only that SCB opened an account at its Hong Kong branch for Soma, created various internal documents evidencing that account's existence, corresponded by fax and letter with Soma concerning that account, and received and distributed funds into and out of that account, including the final transfer of approximately $250,000 to a bank in Nevada.[40]

"Additionally, . . . and not in connection with Soma's account, SCB maintained a website."[41] The Tenth Circuit found those contacts "insufficient to show purposeful direction for two reasons: (1) based on the record, the plaintiff failed to show that the defendant solicited the plaintiff's business,

---

[37] *Old Rep. Ins. Co.*, 877 F.3d at 907 (quoting *Walden*, 571 U.S at 285).

[38] *Burger King Corp.*, 471 U.S. at 475.

[39] *Soma*, 196 F.3d at 1294–95.

[40] *Id.* at 1299.

[41] *Id.* at 1298.

-11-

and (2) the limited number of communications concerning the account did not suffice."[42]  Here too, the record fails to show that Banco Norte solicited the funds actually wired by the Velascos. And the Velascos allege no communications that would suggest Banco Norte reached out beyond Mexico and itself  "create[d] a continuing relationship and obligations with" them.[43]

* * *

To summarize, Banco Norte lacks the "minimum contacts" with Kansas on which this Court's jurisdiction depends.  Whatever its subsidiary's contacts may be, Banco Norte exists independent of UniTeller and is far from "essentially at home" in Kansas.  Banco Norte's suit-related, injury-causing actions in Mexico, moreover, in no way meaningfully connect it to Kansas. Accordingly, this Court cannot exert personal jurisdiction over Banco Norte.[44]

## IV.   Conclusion

Having determined that no basis exists to exercise personal jurisdiction over Banco Norte, resolving the parties' motions becomes simple.  The Court must deny the Velasco's default judgment,[45] set aside the clerk's entry of default against Banco Norte,[46] and dismiss Banco Norte for lack of personal jurisdiction.[47]

---

[42] *Old Rep. Ins. Co.*, 877 F.3d at 913; *see also Soma*, 196 F.3d at 1298–99.

[43] *Old Rep. Ins. Co.*, 877 F.3d at 913.

[44] Because no  minimum contacts exist, the Court need not consider whether making Banco Norte defend this suit in Kansas offends "traditional notions of fair play and substantial justice." *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007).

[45] *See Williams*, 802 F.2d at 1203 ("A judgment is void when a court enters it lacking . . . jurisdiction over the parties.").

[46] *See Pinson v. Equifax Credit Inf. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (suggesting that "a meritorious defense" may provide good cause to set aside an entry of default).

[47] As such, the Court need not address Banco Norte's arguments for dismissal under Rule 12(b)(5).

**IT IS THEREFORE ORDERED** that Plaintiffs' Amended Motion for Default Judgment (Doc. 55) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Banco Norte's Combined Motion To Dismiss, Set Aside Default Judgment (Doc. 59) is hereby **GRANTED.**

**IT IS SO ORDERED**.

Dated this 1st day of September 2020.

This case is now closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE